IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>ARTHUR F. LYONS<br>RYANN N. LYONS,<br><br><br>Debtors. | Chapter 13<br><br>Case No. 2:08-bk-13657-SSC<br><br><br>**MEMORANDUM DECISION RE**<br>**SECTION 1325 INTEREST RATE** |

## I. INTRODUCTION

This matter comes before the Court on an "Objection to Proposed Chapter 13 Plan and Confirmation Thereof" ("Objection") filed with the Court on October 17, 2008 by American Honda Finance Company ("Honda").[1] The Court conducted an initial hearing on December 2, 2008, and a subsequent hearing on December 16, 2008. Because of the legal issues presented, at the December 16 hearing, both parties requested that a briefing schedule be set by the Court, with no oral argument on the matter. Once the matter was fully briefed, the parties believed that the Court could dispose of the issues presented.[2] On April 17, 2009, the matter was deemed

---

**1.** This matter is decided under The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 "BAPCPA" (Pub.L.No. 109-8, §1501(b)(1), 119 Stat. 23, 216).

**2.** The Court ordered the parties to file a stipulated statement of facts by January 15, 2009, simultaneous opening memoranda of law by February 17, 2009, and simultaneous responsive memoranda of law by March 16, 2009. The deadlines were extended to March 16,

1

under advisement.

Taking into account the arguments of the parties, the documents filed, and the entire record before the Court, the Court has set forth in this decision its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2008).

## II. FACTUAL BACKGROUND

On July 17, 2008, the Debtors, Arthur and Ryann Lyons (the "Debtors"), purchased a 2008 Honda CRV ("Vehicle") from Honda. They entered into a Motor Vehicle Retail Installment Sales Contract (the "Contract") and Purchase Money Security Agreement with Honda to consummate the purchase. Honda agreed to provide financing to the Debtors in the amount of $24,035.92, with interest thereon at the rate of 16.25 percent per annum until the obligation was paid in full.[3]

On October 6, 2008, the Debtors filed a voluntary Chapter 13 bankruptcy petition, which was assigned Case No. 2:08-bk-13657-SSC, and a proposed Chapter 13 Plan (the "Plan").[4] The Debtors, in their Schedules, listed Honda as holding a purchase money security interest on the Vehicle.[5] In the Plan, the Debtors sought retention of the Vehicle, and proposed adequate protection payments of $220.00 per month until confirmation of the Plan.[6] In the Plan, the Debtors stated that they owed Honda the amount of $24,548 on the Vehicle, that the fair

---

2009, and April 17, 2009, respectively, at the request of the parties.
**3.** See Claims Register, Claim No. 4-1.
**4.** See Docket Entry No. 6.
**5.** See Docket Entry No. 1, Schedule D.
**6.** See Docket Entry No. 6.

2

market value of the Vehicle was $22,000, and that the $24,548 obligation would be repaid in full, with interest thereon at a rate of 7 percent per annum.[7]

Honda filed its Objection on October 17, 2008. The basis of the Objection was that the proposed Plan sought to reduce the interest rate from the contractual rate of 16.25 percent per annum to a rate of 7.00 percent per annum. Moreover, Honda objected to the proposed adequate protection payment, arguing that the payment amount should be $246.00 per month, which equaled 1 percent of the principal amount of its claim, instead of the Debtors' proposed monthly adequate protection payment $220.00.[8]

Although the Court conducted two hearings on the matter, the parties provided little information beyond what was contained in the Objection and the Stipulated Facts. The Court did, however, resolve Honda's adequate protection objection, by increasing the monthly payment from $220.00 to $246.00. Since it is not a disputed issue of fact, the parties apparently agree that the Debtors use the Vehicle for their personal use. It also appears that the Vehicle was acquired within the 910 days of the Debtors' petition filing date. The parties restated their positions on the appropriate interest rate to paid on the Vehicle, with the Debtors arguing that they could reduce the Vehicle's interest rate to a market rate of interest, and Honda urging that the Court adopt the contractual rate of interest set forth in the original Contract.

### III. DISCUSSION

As previously discussed, the Court has already resolved the adequate protection issue, and the Debtors will also amend their Plan to provide for maintenance or surrender of the extended warranty coverage on the Vehicle. The extant issue is whether the Debtors may adjust

---

**7.** The Debtor indicated in the proposed Plan that the estimated fair market value of the Vehicle was obtained from Kelly Blue Book.

**8.** In the District of Arizona, the debtor usually pays a proposed monthly adequate protection payment equal to 1 percent times the value of the vehicle pending confirmation of the debtor's Chapter 13 plan.

3

the interest rate to market, or whether the Debtors must provide for the originally contracted interest rate.

A creditor has an allowed claim which is secured "to the extent of the value of such creditor's interest" in the subject property. 11 U.S.C. § 506(a)(1). If the claim exceeds the value of the property, the excess is classified as unsecured. Id. Under BAPCPA, Section 506(a)(2) has been added to focus on the individual debtor who files a case under either Chapter 13 or Chapter 7 and desires a determination as to the secured status of a creditor on personal property. 11 U.S.C. § 506(a)(2) states that the value of the secured portion of a claim is "based on the replacement value of [the personal property] as of the date of the filing of the petition." Any portion of the claim which exceeds the replacement value of the personal property is treated as an unsecured claim. Thus, in this case, the Court must first determine the replacement value of the Honda as of the filing date of the Debtor's petition.

The Chapter 13 debtor must also comply with 11 U.S.C. § 1325(a)(5). With respect to each secured claim, the debtor must propose one of the following in the plan of reorganization: (1) the secured claimant must accept the plan, (2) the secured claimant must retain the lien securing its claim, the value of any property to be distributed in payment of the claim under the plan cannot be less than the amount of the secured claim, and if periodic payments are made, such payments must be in an amount which assures the secured claimant is adequately protected, or (3) the debtor must surrender the property securing such claim to the secured claimant.

Under BAPCPA, however, Congress added a provision concerning a Chapter 13 debtor who proposes to confirm a plan of reorganization that treats the claim of an automobile purchase-money secured lender. This unnumbered subsection, found after 11 U.S.C. § 1325(a)(9), is referred to as the "hanging" paragraph. The paragraph provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the

4

> claim, the debt was incurred within the 910-day [*sic*] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor . . . .

The paragraph, thus, applies to the individual debtor that utilized purchase-money financing to acquire a motor vehicle for personal use within 910 days of filing his or her petition. For purposes of this Decision, the parties agree that the Debtors utilize the Vehicle for their personal use, and they acquired the Vehicle from Honda, through purchase-money financing, within the 910-day period.

The courts which have interpreted the hanging paragraph have concluded that application of the paragraph disallows debtors from bifurcating qualifying claims under Section 506. In re Trejos, 374 B.R. 210 (9th Cir. BAP 2007); Drive Financial Services, L.P. v. Jordan, 521 F.3d 343 (5th Cir. 2008); In re Wright, 492 F.3d 829, 832 (7th Cir. 2007); In re Brei, 2007 WL 4104884 (Bankr.D.Ariz. 2007). Thus, a debtor must pay the qualifying claim in full, irrespective of the value of the collateral.

In this case, the parties agree that the Vehicle should be treated under the hanging paragraph, and that the debt owing on the Vehicle may not be "crammed-down" to the Vehicle's replacement value. Accordingly, although the replacement value of the Vehicle is less than the amount of Honda's claim, since Honda provided the financing for the vehicle within 910-days of the Debtors' bankruptcy filing, the Debtors must either surrender the Vehicle or provide for full payment of Honda's claim. The Debtors have proposed such treatment of Honda's claim in their Plan. However, the Debtors have adjusted the interest rate associated with Honda's claim from 16.25 percent to 7 percent per annum in the Plan. The remaining issue is whether the Debtors may keep the Vehicle, yet alter the contractual interest rate originally negotiated between the parties.

Although 11 U.S.C. § 1325(a)(5) does not explicitly provide for the payment of interest on allowed claims in a Chapter 13 Plan, 11 U.S.C. § 1325(a)(5)(B)(ii) indicates that the

5

Case 2:08-bk-13657-SSC    Doc 49    Filed 05/13/09    Entered 05/13/09 11:00:27    Desc
Main Document    Page 5 of 9

plan must provide for "the value, as of the effective date of the plan, of the property to be distributed . . . ." The United States Supreme Court, in a pre-BAPCPA decision, interpreted this phrase as requiring the payment of interest since "[a] debtor's promise of future payments is worth less than an immediate payment of the same total amount . . . ." Till v. SCS Credit Corp., 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

In calculating the appropriate rate of interest, the Supreme Court applied the "formula approach."[9] Id. at 478. Under the formula approach, courts are instructed to apply the notional prime rate and adjust this rate by an appropriate risk factor. Id. at 479. The risk factor is calculated by considering such factors as "the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan." Id.

Honda posits two arguments as to why the Debtors must fail in their attempt to lower the interest rate on Honda's claim to the 7 percent proposed rate. First, as a result of the enactment of BAPCPA, the Till decision is inapposite, and the Debtor must pay the contract rate of interest on its claim. Although Till is still applicable to those debtors that are generally proposing the treatment of a secured claim on personal property, the decision may not be so expansively interpreted to dictate the results as to the newly enacted hanging paragraph.[10] Second, Honda argues that even if the formula approach, as set forth in Till, is the appropriate method for determining the applicable interest rate on a claim valued under the hanging paragraph, the Debtors have not established that the contract interest rate is not the appropriate interest rate.

Considering the first argument, Honda agrees with the Debtors that there are courts which apply the Till formula approach to hanging-paragraph cases. Drive Financial, 521 F.3d 343 (5th Cir. 2008); In re Taranto, 365 B.R. 85, 91 (Bankr. 6th Cir. 2007); In re Estrada, 387 B.R. 875, 880 (Bankr.M.D.Fla. 2008); In re Phillips, 362 B.R. 284, 307 (Bankr.E.D.Va.2007); In

---

**9.** This approach is also commonly referred to as the "prime-plus" approach.
**10.** Honda in making this argument does not take the position that Till is no longer good law in cases that do not involve the hanging paragraph.

6

re Henry, 353 B.R. 261, 263 (Bankr.D.Or.2006). However, Honda argues that those cases are from other circuits and districts and are advisory only.

The post-BAPCPA courts which have continued to apply the formula approach to hanging-paragraph cases reason that the only difference between the Till analysis and the approach adopted in their cases is the Supreme Court bifurcated the creditor's claim pursuant to Section 506. *See, e.g.,* Drive Financial, 521 F.3d 343 (5th Cir. 2008); In re Henry, 353 B.R. 261 (Bankr.D.Or.2006). Upon bifurcating the claim under Section 506, the Supreme Court, in Till, then conducts an analysis of how to calculate the interest rate to apply to the secured portion of the claim under 11 U.S.C. § 1325(a)(5)(B). Since BAPCPA does not alter 11 U.S.C. § 1325(a)(5)(B), the courts have concluded that the portion of the Till decision based on 11 U.S.C. § 1325(a)(5)(B) has not been impacted by the passage of BAPCPA and may still be utilized to calculate the appropriate interest rate to be applied to hanging-paragraph claims. Drive Financial, 521 F.3d 343 (5th Cir. 2008); In re Taranto, 365 B.R. 85 (6th Cir. 2007); In re Estrada, 387 B.R. 875 (Bankr.M.D.Fla. 2008); In re Phillips, 362 B.R. 284 (Bankr.E.D.Va.2007); In re Henry, 353 B.R. 261 (Bankr.D.Or.2006).

Irrespective of the weight of authority against it, Honda nevertheless asks this Court to follow the reasoning set forth in the decision of In re Brei, an Arizona bankruptcy case.[11] The relevant language in the decision of In re Brei states:

> the interest rate to be paid . . . is the contract rate, because since the debt may not be crammed down, neither can the interest rate be modified. Morever, *no evidence was presented to show why the 10% contract rate was unreasonable or 'not a market rate' for this particular [d]ebtor with this degree of 'risk.'*

---

**11.** In re Brei, 2007 WL 4104884 (Bankr. D. Ariz. 2007). Honda has also asked this Court to expand the holding in the Panel decision of In re Trejos, 374 B.R. 210 (9th Cir. BAP 2007) to the facts in this case. However, the Panel clearly stated that it was not rendering a decision as to the ability of a debtor to adjust the rate of interest on a hanging-paragraph claim, as the creditor had failed to pursue the issue on appeal. The Court, thus, believes it inappropriate to interpret a decision in the manner requested by Honda, since the appellate court determined that the issue should be left unresolved. Honda's request is, therefore, denied.

7

(Emphasis Added). Honda reads In re Brei as requiring debtors to provide for full payment of the contract rate of interest, regardless of any other considerations. While Honda focuses on the court's initial statement that "since the debt may not be crammed down, neither can the interest rate be modified," the second sentence seems to indicate that had the debtor provided some evidence that the contract rate was "unreasonable" or not a market rate of interest, the court may have come to a different conclusion. Accordingly, the In re Brei decision seems to provide for an adjustment of the interest rate upon an appropriate evidentiary showing as to what interest rate is appropriate.

In any event, this Court declines to follow the interest-rate analysis of In re Brei. As noted by the weight of authority, Section 506 applies to a procedure to bifurcate claims when a creditor with an allowed secured claim is also partially unsecured. Section 1325(a)(5)(B) permits a creditor with a secured claim to receive an appropriate rate of interest on the claim to ensure that the payments received by the creditor over the term of the Chapter 13 plan are equal to the present value of the secured claim at the time of confirmation. In essence, the secured creditor is not harmed. The hanging paragraph, however, refers only to Section 506, not Section 1325(a)(5)(B). Although a claim within the parameters of the hanging paragraph may not be bifurcated, with the creditor to be paid the full principal amount of its claim, if the other terms and conditions set forth in the hanging paragraph are met, there is no reference as to how interest should be treated. This Court declines to expand the interpretation of the hanging paragraph to force the payment of interest only at the contract rate when no such reference is made. The Till case still applies to how interest should be computed as to the Debtors' repayment of Honda in their Plan.

In its second argument, Honda posits that even if Till still applies to cases involving the hanging paragraph, the appropriate rate of interest, in this case, is the contract rate since the Debtors failed to establish that said interest rate "was unreasonable, or not a market rate

8

[of interest] for . . . [d]ebtors with this degree of risk.[12] While Honda relies on the decision of In re Brei in support of its argument that the contract rate is presumed to be the appropriate rate of interest unless the debtor rebuts this presumption, the Court disagrees with the reasoning in Brei. From this Court's standpoint, there is no presumption in favor of the contract rate of interest, and there is no discussion of such a presumption in the Till decision.  Instead, the Court adopts the Till formula approach, which directs courts to "start[] from a . . . low estimate and adjust upward . . . ."  In applying the formula approach, the burden of proof, at an evidentiary hearing, is squarely placed on the creditors.  Till, at 479.  Accordingly, since neither the Debtors nor Honda have provided evidence to establish the appropriate interest rate to be paid on Honda's claim, the Court must set another hearing on this matter.

## IV. CONCLUSION

The Court concludes that the so-called hanging paragraph, set forth in Section 1325, only restricts the Debtors from bifurcating Honda's claim, and that the Till formula approach must be used to determine the appropriate interest rate on said claim.  Since the parties have not provided any evidence to establish the appropriate rate of interest to be applied to Honda's secured claim, the Court must set a further hearing on this matter, at which point the appropriate rate of interest will be decided.  A separate Rule 7016 scheduling conference will be set in this contested matter by separate notice from the Court.

DATED this 13th day of May, 2009.

Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

---

**12.** See Docket No. 47, Page 4.

9